Merrimack,
No. 4627.

AMELIA B. PINSONNEAULT, *Adm'x*

*v.*

RICHARD O. MOSHER.

Argued February 4, 1958.
Decided February 19, 1958.

*Charles W. Tobey, Jr.* (by brief and orally), for the plaintiff.

*L. Wilder Quint* and *George P. Cofran* (*Mr. Quint* orally), for the defendant.

DUNCAN, J.   The only exception appearing in the record which has been briefed and argued by the plaintiff is her exception to the denial of her first request for instructions to the jury as follows: "1.   There is no issue of contributory negligence in this case."

The Trial Court submitted to the jury the issues of the due care of the parties, both at common law and under the statute pertaining to the operation of motor vehicles "approaching horses." RSA 263:30.   This statute, which was read to the jury, provides in substance that the operator of a motor vehicle approaching a horse upon a public way shall take every reasonable precaution to avoid frightening the horse; and that if it appears to be frightened the operator shall reduce speed "and, if requested by the raising of a hand by the rider . . . shall not proceed farther . . . and, in cases of extreme fright, shall upon request fully stop the motive power." See *Gonet* v. *Company*, 84 N. H. 554.

The plaintiff's request for instructions was equivalent to a motion to withdraw the issue of contributory negligence from the jury's consideration.   It was properly denied if there was evidence to warrant a finding of negligence on the part of the plaintiff's decedent.

There was evidence from which it could be found that the decedent saw the truck approaching from the rear when it was one

hundred or more feet away, traveling upon the left hand side of the road. The truck was a 1954 Chevrolet of a ton and a half capacity, and was transporting six hogs weighing approximately 1200 pounds. According to the defendant's evidence the truck continued on the left hand side of the road in second gear at a speed of about fifteen miles an hour, and as it overtook the horse which had given no indication of fright, the horse "jumped, reared and backed . . . so that he struck on the very back end of the truck" after the cab of the truck had gone by.

The decedent's testimony, which was introduced by deposition, was that after he had seen the truck apparently proceeding safely upon the other side of the road a hundred or more feet away, "all at once I heard that truck motor right side of me and . . . he hit the horse . . . . " It was not disputed that the horse was cut upon the right hip or side of the rump. The decedent testified that the horse was thrown to the ground, while the defendant's evidence tended to show that it was not.

There was evidence that some six or eight weeks before this accident the decedent's horse had been overtaken by another ton and a half Chevrolet truck and had upon that occasion without warning "throw[n] his head up and swung his hind end right in front" of the truck when it was ten to fifteen feet away. There was likewise evidence that prior to the collision with the defendant's truck, the decedent had paid no further attention to the truck after seeing it to the rear, and that he gave no signal as provided by the statute, requesting the defendant to stop either the truck or its motor. The decedent testified that he was "trying to keep her steady so she wouldn't jump around when that noise come to her, you never know what a horse is going to do."

The evidence warranted a finding by the jury that the decedent knew or in the exercise of due care should have known that his horse might be expected to become unruly or suddenly change its course, and that he was negligent in not warning the defendant to stop. Since there was evidence to warrant submission of the issue of contributory negligence, the plaintiff's request for instructions was properly denied.

*Exceptions overruled.*

WHEELER, J., did not sit; the others concurred.